IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA

MELVIN E. WILLIAMS,

Petitioner,

vs.

MICHAEL MARTEL, Warden (A),

Respondent.

2:08-cv-01024 (JKS)

MEMORANDUM DECISION

Petitioner Melvin E. Williams, a state prisoner appearing *pro se*, has filed a petition for Writ of Habeas Corpus under 28 U.S.C. § 2254. Williams is currently in the custody of the California Department of Corrections and Rehabilitation, incarcerated at the Mule Creek State Prison in Ione, California. Respondent has filed an answer, and Williams has filed a traverse.

## I. STATEMENT OF RELEVANT FACTS

The following statement of facts is taken from the reasoned, unpublished decision of the Court of Appeal:

> In August 2003, Lorena Maxim befriended defendant and began to spend most of her time with him. Maxim, a prostitute who pleaded guilty in exchange for her testimony, admitted that she and defendant turned to crime in October 2003 to supplement their income.
> Although defendant was charged with a total of 13 criminal counts, the jury either deadlocked on or acquitted him of charges arising from robberies that took place on October 9, October 18 and early on October 28, 2003. We do not recite the evidence with respect to the charges that did not result in convictions.

*Factual Summary*

        In June 2003, defendant came to the door of Clara Paz at her home on Branch
Street in Sacramento and asked to purchase some heroin. Paz told him to leave his name
and number and she would get back to him. Defendant walked over to a box next to her
bed stand and remarked, "from my understanding you keep it in a box like this." He then
grabbed the box, which contained approximately two ounces of heroin. He also took
some cash from her purse. When Paz got up, defendant pulled out a gun, pointed it at her
head and threatened to "pop" her.

        At around 11:30 p.m. on October 28, 2003, Paz was in her bedroom using her
silver laptop computer. She looked up and noticed defendant in her doorway. Defendant,
who had a small silver gun in his hand, said "remember me?" Remembering defendant
from the June incident, Paz replied "get the fuck out of my house."

        Defendant cocked the gun and was pointing it down as he stood about four feet
from Paz. He told her "this is for what happened before," and reached over to seize the
laptop. Paz grabbed the computer and struggled with defendant for control, as she
screamed for her son-in-law to help.

        Defendant turned and pointed the gun at Paz's forehead, saying "I'll pop you." Paz
then let go of the computer.

        As defendant departed with the laptop, Paz went into the living room as her son-
inlaw Octavio Barron entered from the kitchen. Paz told Barron what happened and he
began chasing defendant. Defendant pointed the gun at Barron's temple and threatened to
shoot him in the head if he took a step closer. Barron replied that he "didn't care."
Defendant quickly walked out of the house and got into a large white car that was waiting
for him at the corner of Eleanor and Branch.

        Two Sacramento police officers who were stationed only a few blocks away
observed a white Mercury with an expired plate registration and stopped the car. They
found defendant in the driver's seat and Maxim was in the passenger seat, with a silver
laptop computer near her feet. Because defendant had no identification, one of the
officers returned to his patrol car to run a check. As he did so, a police broadcast alerted
the officers to the robbery at the Paz house, and the two suspects were promptly taken
into custody.

        Based on the evidence recited above, defendant was convicted of robbery as to
Paz and assault with a firearm against Barron, with true findings as to two firearm
enhancements.[1]


                        II.  BACKGROUND/PRIOR PROCEEDINGS

A jury found Williams guilty of first degree robbery (Cal. Penal Code, § 211) and assault

with a firearm (Cal. Penal Code, § 245(a)(2).  The jury also found firearm enhancements to be

_____

        [1] *People v. Williams*, 2007 WL 2985254, *1-*2 (Cal. App. 3 Dist. 10/15/2007).  These
facts are presumed to be correct under 28 U.S.C. § 2254.

true with respect to each count (Cal. Penal Code, §§ 12022.5(a)(1), 12022.53(b)).  The trial court

then found that Williams had sustained a prior "strike" felony conviction under California Penal

Code § 667(a).  Williams was sentenced to an aggregate prison term of 30 years, 4 months.

Williams timely appealed his conviction to the Court of Appeal for the State of

California, Third District, who affirmed the judgment and sentence in a reasoned, unpublished

opinion.[2]

Williams then filed a petition for review of the Court of Appeal's decision in the

California Supreme Court who denied Williams' petition on January 3, 2008.[3]

Williams timely filed a petition for a writ of habeas corpus in this Court on September

19, 2008.  In his petition to this Court, Williams raises five grounds for relief.  Respondent

acknowledges the grounds asserted in the instant petition are properly exhausted.  Respondent

asserts no affirmative defenses.

## III.  STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C.

§ 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or

involved an unreasonable application of, clearly established Federal law, as determined by the

Supreme Court of the United States" at the time the state court renders its decision or "was based

on an unreasonable determination of the facts in light of the evidence presented in the State court

proceeding."[4]  The Supreme Court has explained that "clearly established Federal law" in §

---

[2]  *Williams*, 2007 WL 2985254.

[3]  Lodged Doc. No. 3.

[4]  28 U.S.C. § 2254(d); *see Williams v. Taylor*, 529 U.S. 362, 404-06 (2000); *see also*
*Lockyer v. Andrade,* 538 U.S. 63, 70-75 (2003) (explaining this standard).

2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision."[5]  The holding must also be intended to be binding upon the states; that is, the decision must be based upon constitutional grounds, not on the supervisory power of the Supreme Court over federal courts.[6]  Thus, where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'"[7]  When a claim falls under the "unreasonable application" prong, a state court's application of Supreme Court precedent must be objectively unreasonable, not just incorrect or erroneous.[8]  The Supreme Court has made clear that the objectively unreasonable standard is a substantially higher threshold than simply believing that the state court determination was incorrect.[9]  "[A]bsent a specific constitutional violation, federal habeas corpus review of trial error is limited to whether the error 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"[10]  In a federal habeas proceeding, the standard under which this Court must assess the prejudicial

---

[5] *Williams*, 529 U.S. at 412.

[6] *Early v. Packer*, 537 U.S. 3, 10 (2002).

[7] *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (alterations by the Court); *see Wright v. Van Patten*, 552 U.S. 120, 127 (2008) (per curiam); *Kessee v. Mendoza-Powers*, 574 F.3d 675, 678-79 (9th Cir. 2009); *Moses v. Payne*, 555 F.3d 742, 753-54 (9th Cir. 2009) (explaining the difference between principles enunciated by the Supreme Court that are directly applicable to the case and principles that must be modified in order to be applied to the case; the former are clearly established precedent for purposes of § 2254(d)(1), the latter are not).

[8] *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003) (internal quotation marks and citations omitted).

[9] *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

[10] *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974).

impact of constitutional error in a state-court criminal trial is whether the error had a substantial and injurious effect or influence in determining the outcome.[11]  Because state court judgments of conviction and sentence carry a presumption of finality and legality, the petitioner has the burden of showing by a preponderance of the evidence that he or she merits habeas relief.[12]

In applying this standard, this Court reviews the last reasoned decision by the state court,[13] which in this case was that of the California Court of Appeal.  Under AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence.[14]  This presumption applies to state trial courts and appellate courts alike.[15]

When there is no reasoned state court decision denying an issue presented to the state court and raised in a federal habeas petition, this Court must assume that the state court decided all the issues presented to it and perform an independent review of the record to ascertain whether the state court decision was objectively unreasonable.[16]  The scope of this review is for clear error of the state court ruling on the petition:

---

[11] *Fry v. Pliler*, 551 U.S. 112, 121 (2007) (adopting the standard set forth in *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993)).

[12] *Silva v. Woodford*, 279 F.3d 825, 835 (9th Cir. 2002); *see Wood v. Bartholomew*, 516 U.S. 1, 8 (1995) (per curiam) (stating that a federal court cannot grant "habeas relief on the basis of little more than speculation with slight support").

[13] *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991); *Robinson v. Ignacio,* 360 F.3d 1044, 1055 (9th Cir. 2004).

[14] 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

[15] *Stevenson v. Lewis*, 384 F.3d 1069, 1072 (9th Cir. 2004).

[16] *Reynoso v. Giurbino*, 462 F.3d 1099, 1109 (9th Cir. 2006); *Pham v. Terhune*, 400 F.3d 740, 742 (9th Cir. 2005) (per curiam).

> [A]lthough we cannot undertake our review by analyzing the basis for the state court's decision, we can view it through the "objectively reasonable" lens ground by *Williams* . . . .  Federal habeas review is not *de novo* when the state court does not supply reasoning for its decision, but an independent review of the record is required to determine whether the state court clearly erred in its application of controlling federal law.  Only by that examination may we determine whether the state court's decision was objectively reasonable.[17]

"[A]lthough we independently review the record, we still defer to the state court's ultimate decision."[18]

## IV.  DISCUSSION

As mentioned above, Williams raises five grounds for relief:

1.      The trial court erred when it denied Williams' motion to suppress items seized during the vehicle stop and his arrest because the officers did not have a reasonable suspicion to prolong the traffic stop.

2.      The trial court effectively violated Williams' right to represent himself by denying his motions to continue the trial until he could prepare for trial.

3.      The trial court erred by sentencing Williams to the "high term" on the robbery count based on facts not found by the jury.

4.      The trial court erred when it declined to strike Williams' previous conviction, for purposes of sentencing, in order to avoid an unjust sentence.

5.      The sentence imposed by the trial court violated the Eighth Amendment prohibition on cruel and unusual punishment.

---

[17] *Delgado v. Lewis* (*Delgado II*), 223 F.3d 976, 982 (9th Cir. 2000) (internal citation omitted); *see also Lewis v. Mayle*, 391 F.3d 989, 996 (9th Cir. 2004).

[18] *Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir. 2002).

<u>1. Denial of Motion to Suppress Violated Fourth Amendment</u>

In his first ground for relief, Williams claims that the Court of Appeal improperly upheld his conviction, which was based on evidence obtained in violation of the Fourth Amendment. Specifically, Williams argues the officers who pulled him over did not have reasonable suspicion to prolong the stop beyond an inquiry into Williams' identity and the status of his vehicle registration.

Before the trial began, Williams' attorney filed a Motion to Suppress under California Penal Code § 1538.5, attempting to suppress all of the evidence obtained as a result of the traffic stop and subsequent arrest.[19]  The trial court denied the motion, and Williams raised the issue in his direct appeal.  The Court of Appeal addressed Williams' argument on the merits and held that the trial court properly admitted the evidence.[20]

In his petition to this Court, Williams reasserts his claim that the evidence obtained as a result of the traffic stop was improperly admitted against him.  Williams misperceives the role of a federal court in a habeas proceeding.  The Supreme Court has held that a Fourth Amendment claim is not cognizable in federal habeas proceedings if a petitioner has had a full and fair opportunity to litigate the claim in state court.[21]  The relevant inquiry is whether petitioner had the opportunity to litigate his claim, not whether he did in fact do so or even whether the claim

---

[19]  Clerk's Transcript, Vol. 2, pp. 420-24.

[20]  Lodged Doc. No. 1, pp. 4-11.

[21]  *Stone v. Powell,* 428 U.S. 465, 481-82 (1976) ("We hold, therefore, that where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial.").

was correctly decided.[22]  The Ninth Circuit has held that California Penal Code § 1538.5 affords

a criminal defendant an opportunity for "full and fair" litigation of a Fourth Amendment claim

within the meaning of *Stone v. Powell*.[23]  Accordingly, this issue is not cognizable by this Court

in a federal habeas proceeding.  Williams is not entitled to relief under his first ground.

> 2.  Trial Court Erred by Not Continuing the Trial to Allow Williams to Prepare His Own
>
> Defense

In his second ground for relief, Williams claims that the trial court effectively prevented

him from representing himself by declining to continue the trial until he had an adequate

opportunity to prepare a defense.  At this point a brief background of the relevant proceedings is

instructive.

On May 11, 2005, five days before trial was to begin, Williams filed a *Faretta* Motion,[24]

seeking to represent himself.  The judge apprised Williams of the dangers of representing

himself and informed Williams, three different times, that he would not continue the trial in

---

[22]  *Ortiz-Sandoval v. Gomez*, 81 F.3d 891, 899 (9th Cir. 1996) (citing *Gordon v. Duran*, 895 F.2d 610, 613 (9th Cir.1990) and *Locks v. Sumner*, 703 F.2d 403, 408 (9th Cir. 1983).

[23]  *Gordon*, 895 F.2d at 613-14 ("Under California law, a defendant can move to suppress evidence on the basis that it was obtained in violation of the Fourth Amendment.  *See* Cal.Penal Code § 1538.5 (West 1982 & Supp.1989). Given that Gordon had an opportunity in state court for "full and fair litigation" of his Fourth Amendment claim, the Constitution does not require that Gordon be granted habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial.").

[24]  This is a shorthand reference to *Faretta v. California*, 422 U.S. 806 (1975), a Supreme Court case which held that a defendant in a state criminal trial has a constitutional right to proceed without counsel when he voluntarily and intelligently elects to do so.

order to allow Williams extra time to prepare his defense.[25]  Williams stated that he understood, and that he still wanted to represent himself.  The judge then granted Williams' motion.

On May 16, 2005, the morning that Williams' trial was to begin, Maxim entered into a plea agreement with the prosecution whereby she would testify against Williams.  The judge explained the implications of Maxim's plea agreement to Williams and encouraged him to reinstate his counsel, Mr. Irish.  Williams acknowledged that representing himself had been extremely difficult and agreed to reinstate Mr. Irish.  The judge then decided to continue the trial until May 31, 2005, in order to allow Mr. Irish to investigate and rebut Ms. Maxim's statements against Williams.

On May 31, 2005, Williams renewed his *Faretta* Motion.  The judge reiterated the disadvantages that Williams may face in representing himself and stated again that he would not grant Williams a continuance.  Williams informed the court that he wanted to file four different motions, including a motion to recuse and, in the event of a denial, Williams wanted the court to stay the trial until he was able to file a writ of appeal with the Third District Court of Appeal. The judge responded that he would read the motion and would only postpone the trial to allow Williams to file a writ if the motion had any merit.  After reading the motion, the judge determined that it was without any merit and told Williams that he would not continue the trial to allow him to file a writ.  After some further colloquy, Williams decided to proceed with Mr. Irish as his counsel.

---

[25]  917 P.2d 628.

The Court of Appeal held that the trial judge did not abuse his discretion by denying Williams' requests to continue the trial.[26]  In order to prevail on his petition to this court, Willaims must show that this holding was contrary to clearly established Federal law or was based on an unreasonable determination of the facts.[27]  Williams has not met this burden.

"The matter of continuance is traditionally within the discretion of the trial judge . . . ."[28] However, under certain circumstances, the denial of a request for a continuance can constitute a due process violation.[29]  "There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process.  The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied."[30]

In declining to grant a continuance on May 11, the judge considered several factors, all of which weighed against granting a continuance.  The judge noted the untimeliness of Williams' request, the implication a delay would have on Ms. Maxim (his co-defendant at the time) who was in custody, and the fact that Williams still had a full five days to prepare his defense.

By the time the trial was to begin on May 31, 2003, the court had already granted a continuance in order to allow Mr. Irish to investigate any statements made by Maxim and modify his theory of defense accordingly.  However, on the morning of trial, Williams dismissed his

---

[26]  Lodged Doc. No. 1.

[27] 28 U.S.C. § 2254(d); *see Williams v. Taylor*, 529 U.S. 362, 404-06 (2000); *see also Lockyer v. Andrade,* 538 U.S. 63, 70-75 (2003) (explaining this standard).

[28]  *Ungar v. Sarafite*, 376 U.S. 575, 589 (1964).

[29]  *Id.*

[30]  *Id.*

counsel for the second time during the proceedings, filed several meritless motions and asked for a continuance in order to appeal them.  The judge held that the motions lacked any merit and that the trial should proceed as scheduled.

Williams has not shown, by citing to either controlling law or fact, that the trial judge's decision was not based on a rational consideration of the circumstances.  Furthermore, Williams makes no showing that the trial judge prevented him from exercising his right to represent himself.  Indeed, the record indicates that the judge was more than willing to allow Williams to represent himself, as evidenced by the granting of two separate *Faretta* motions.[31]  Thus, Williams is unable to show that the holding of the Court of Appeal was contrary to clearly established Federal law or was based on an unreasonable determination of the facts.[32]

Even if this Court were to find that the trial court erred in denying Williams' motions to continue the trial, Williams would not be entitled to habeas relief.  At a minimum, Williams must show some prejudice resulting from the court's denial of the continuance motion, a burden Williams has not carried.[33]

---

[31]  A defendant's right to serve as his or her own counsel does not include a right to continue the trial until he or she has had an additional opportunity to prepare for trial.  *See Morris v. Slappy*, 461 U.S. 1, 11-12 (1983) ("Trial judges necessarily require a great deal of latitude in scheduling trials. Not the least of their problems is that of assembling the witnesses, lawyers, and jurors at the same place at the same time, and this burden counsels against continuances except for compelling reasons. Consequently, broad discretion must be granted trial courts on matters of continuances; only an unreasoning and arbitrary 'insistence upon expeditiousness in the face of a justifiable  request for delay' violates the right to the assistance of counsel.") (citing *Ungar v. Sarafite*, 376 U.S. 575, 589 (1964)).

[32] 28 U.S.C. § 2254(d); *see Williams*, 529 U.S. at 404-06; *see also Lockyer,* 538 U.S. at 70-75 (explaining this standard).

[33]  *Armant v. Marquez*, 772 F.2d 552, 556-57 (9th Cir. 1985); *Brecht*, 507 U.S. at 635-37 (constitutional error is harmless if we find that the error did not have a substantial and injurious effect or influence in determining the jury's verdict).

Williams has not shown that the denial of his motion for a continuance on either May 11 or May 31 had any prejudicial affect on the jury's verdict.  Williams essentially claims that by denying his motion to continue the trial, the trial judge effectively prevented him from representing himself.  However, this argument is belied by the record.  On the morning of May 16, Williams admitted to the judge that he was having significant difficulty preparing his own defense.[34]  Alternatively, the judge spoke very highly of Mr. Irish as an attorney and his performance in the pre-trial proceedings.[35]  Thus, Williams has failed to show, had he been granted a brief continuance to better prepare his own defense, he would have managed to present a better defense than Mr. Irish did.

With respect to the judge's decision to deny Williams' May 31 motion to continue, Williams is also unable to show prejudice.  On the morning of May 31, Williams, acting as his own counsel, presented the judge with four different motions.  The judge denied the motions and informed Williams that he was free to appeal their denial to the Court of Appeal.[36]  However, the judge informed Williams that he would not postpone the trial to allow Williams to appeal. Williams has failed to show, either by citation to caselaw or the record, that had he been granted a continuance in order to appeal the trial court's decision he would have managed to obtain a more favorable outcome.  Accordingly, Williams is unable to show prejudice.

To the extent that he argues that the trial court treated him differently than Mr. Irish, by granting Mr. Irish a continuance on May 16 but denying Williams' motions for a continuance on

---

[34]  Lodged Doc. No. 9, pp. 1163-64.

[35]  Lodged Doc. No. 9, pp. 1157-62.

[36]  Lodged Doc. No. 11, p. 1218.

May 11 and May 31, his argument is belied by the record.  There is no indication that, as of May 11, Mr. Irish needed a continuance to better prepare for trial or that the court would have granted one had Mr. Irish requested one.  Indeed, the reasons for denying Williams' motion for a continuance on May 11 would have been equally applicable to Mr. Irish, had he motioned for a continuance: the request was untimely; any delay would implicate Ms. Maxim's rights; and, there was still five full days before trial.

On the morning of May 16 Ms. Maxim entered into a plea agreement with the prosecution whereby she would testify against Williams.  As the Court of Appeal noted, this represented a sudden turn of events and had a significant implication on the defense Williams would present.[37]  In light of this, the judge granted Mr. Irish a continuance, to allow him "to review and investigate Maxim's newly produced videotaped statement to the prosecutor . . . ."[38]  Thus, it is clear from the record that the judge granted the continuance solely on the basis of this major, last-minute development and not out of some sense of favoritism for Mr. Irish.  Williams has not managed to show anything to the contrary.[39]

On May 31, Williams, acting as his own counsel, filed four separate motions.  The trial judge held that the motions were without merit, but invited Williams to appeal his decisions if he wanted to.  However, the judge informed Williams that he would not continue the trial while

---

[37]  Lodged Doc. No. 1, p. 12.

[38]  Lodged Doc. No. 1, p. 13.

[39]  In fact, the record seems to indicate that the trial judge liked Williams.  Lodged Doc. No. 11, p. 1222.  The judge stated that he had no animosity toward Williams whatsoever and that any rulings against him were on the merits of the issue presented and not personal.

either Williams or Mr. Irish appealed the denial of Williams' motions.[40]  Thus, it is clear that the judge was treating Williams and Mr. Irish similarly.

Because Williams has been unable to show that the decision of the Court of Appeal was contrary to clearly established Federal law or was based on an unreasonable determination of the facts, he is not entitled to relief on his second ground.[41]

### 3.  The Trial Court Erred by Sentencing Williams to the "High Term" on the Robbery Count Based on Facts Not Found by the Jury

With respect to the robbery count, the judge sentenced Williams to the "upper term" of six years, which was then doubled because Williams had previously sustained a "strike" within the meaning of California's "Three Strikes Law."  In deciding to impose the "upper term" of six years, the judge considered several aggravating factors:

1.  There was an element of sophistication and planning to this crime that indicated that Williams is more than a causal offender.

2.  The victim in this case was vulnerable; the defendant knew who the victim was, knew that she moved rather slowly and chose to target her when she was in her own home with her grandchildren nearby.

---

[40]  Lodged Doc. No. 11, p. 1219.  At the time that the court was discussing the merits of Williams' four motions, Williams was acting as his own counsel.  However, at this time, Williams was also considering reinstating Mr. Irish as his counsel.  The judge was simply informing Williams that he would not continue the trial while *either* Williams or Irish appealed Williams' motions.  Furthermore, the fact that Williams did not appeal these motions and promptly reinstated Mr. Irish when he learned that he would not be granted a continuance, support the inference that Williams was using the motions as a way to leverage the trial court into granting a continuance.

[41]  28 U.S.C. § 2254(d); *see Williams*, 529 U.S. at 404-06; *see also Lockyer,* 538 U.S. at 70-75 (explaining this standard).

3.      Williams is engaged in violent conduct, which indicates a serious danger to

society and his prior convictions are of increasing seriousness.

4.      Williams has served a prior prison term.[42]

Williams contends that the trial court violated his rights by enhancing his sentence based on facts

he neither admitted, nor were found to be true by the jury.

Under the line of United States Supreme Court decisions beginning with *Apprendi v. New
Jersey*[43] and culminating in *Cunningham v. California,*[44] the constitutional requirement of a jury
trial and proof beyond a reasonable doubt applies only to a fact that is legally essential to the
punishment, that is, to any fact that exposes a defendant to a greater potential sentence than is
only authorized by the jury's verdict or an admission by the defendant himself or herself.

Under California's Determinate Sentencing Law ("DSL"), "three terms of imprisonment
are specified for most offenses."[45]  The statute defining the offense generally prescribes an upper
term, a middle term and a lower term.[46]  At the time of Williams' offense, California Penal Code
Section 1170(b) required a sentencing court to impose the middle term "unless there [were]
circumstances in aggravation or mitigation of the crime."  In *Cunningham*, the Supreme Court
held that the presumptive middle term, not the upper term, was the "relevant statutory

---

[42]  Reporter's Transcript on Appeal, Vol. 10, pp. 2693-95.

[43]  530 U.S. 466 (2000).

[44]  549 U.S. 270 (2007).

[45]  *People v. Black*, 113 P.3d 534, 538 (Cal. 2005), *vacated on other grounds*, 549 U.S.
1190 (2007).

[46]  *Cunningham*, 549 U.S. at 277.

maximum" that could be imposed, absent additional findings of fact by the jury.[47]  Therefore,

after *Cunningham*, a California judge could only impose an upper term sentence based on

aggravating facts found by the jury or admitted by the defendant.[48]  Applying this logic,

Williams argues his upper term sentence was not appropriate because he did not admit to his

previous conviction nor did a jury make a factual finding on the matter.  Williams' argument is

without merit.

　　The law is clear that the imposition of an upper term sentence based upon a prior

conviction is a well established exception to *Apprendi* and its progeny.[49]  Specifically, a

defendant's criminal history need not be admitted to by the defendant or proved to a jury beyond

a reasonable doubt.[50]  Furthermore, under California law the existence of a single aggravating

circumstance is legally sufficient to make the defendant eligible for the upper term.[51]  While the

court may make factual findings with respect to additional aggravating circumstances, these

---

[47]  *Id*. at 288.

[48]  *Id*. at 293.

[49]  *Boulware v. Marshall*,  621 F.Supp.2d 882, 892 (C.D.Cal. 2008).

[50]  *Cunningham*, 549 U.S. at 288-289 ("*Except for a prior conviction*, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.") (internal citations omitted) (emphasis added).  *United States v. Martin*, 278 F.3d 988, 1005-06 (9th Cir. 2002) (citing *Almendarez-Torres v. United States*, 523 U.S. 224, 249 (1998); *United States v. Pacheco-Zepeda*, 234 F.3d 411, 414 (9th Cir. 2000).  To the extent that Williams argues that the post-*Cunningham* reformed DSL is being applied in an "ex post facto" fashion, he is incorrect. *Cunningham* did not overrule the prior-conviction exception to *Apprendi*.  Furthermore, under *People v. Sandoval*, 161 P.3d 1146 (Cal. 2007) the appropriate remedy is a remand to allow for resentencing.  *Sandoval* held that resentencing under the reformed DSL of prisoners who had already been sentenced did not constitute a violation of the prohibition against "ex-post-facto" laws.  This decision has not been overturned by the Supreme Court.

[51]  *Boulware*, at 893 (citations omitted).

findings, themselves, do not further raise the authorized sentence beyond the upper term.[52] Accordingly, judicial fact finding on those additional aggravating circumstances is not unconstitutional.[53]

When it imposed the upper term, the trial court explicitly found that Williams had served a prior term in prison.[54]  Accordingly, Williams is not entitled to relief.

Williams also seems to argue that the prior conviction improperly became the basis for two different enhancements: his prior offense was the reason the trial court imposed the upper term; this term was then doubled on the basis of the same conviction (which was also a "strike" within the meaning of California's "Three Strikes Law").  The Supreme Court has held that where it is the legislature's intent to impose multiple punishments, the imposition of such sentences does not violate the constitution.[55]  The California Courts have noted that the California legislature intended to impose both a sentencing enhancement and a doubled term under the "Three Strikes Law."[56]  Accordingly, Williams has failed to show that the decision of

---

[52]  *People v. Black*, 161 P.3d 1130, 1140 (Cal. 2007) (citations omitted).

[53]  *Id*.

[54]   Reporter's Transcript on Appeal, Vol. 10, p. 2695.

[55]  *Missouri v. Hunter*, 459 U.S. 359, 367-68 (1983) ("[T]he question of what punishments are constitutionally permissible is no different from the question of what punishment the Legislative Branch intended to be imposed. *Where Congress intended, as it did here, to impose multiple punishments, imposition of such sentences does not violate the Constitution.*") (internal citations omitted, emphasis in original).

[56]  *People v. Cartwright*, 46 Cal.Rptr.2d 351, 359 (Cal.App.3 1995) ("We conclude the Legislature intended a defendant's sentence under the three strikes law should include a doubled term or life term, as appropriate under section 667, subdivision (e), plus an enhancement under section 667, subdivision (a) for each prior serious felony conviction."); *People v. Acosta*, 52 P.3d 624, 641 (Cal. 2002) ("[U]sing one of Acosta's prior convictions first as a strike, then under option 1 to set the minimum term of his indeterminate life sentence as a third strike

the California Court of Appeal was contrary to clearly established Federal law or was based on an unreasonable determination of the facts, he is not entitled to relief on his second ground.[57] Williams is not entitled to relief on his third ground.

### 4.  The Trial Court Erred When it Refused to Strike Williams' Prior Convictions

During sentencing, Williams' counsel filed a *Romero* motion,[58] requesting that the court strike one of his previous convictions for the purposes of sentencing.   The judge denied the motion, and the Court of Appeal upheld the denial.  Williams has reasserted this claim in his petition to this Court.

Williams misunderstands the role of this Court in a federal habeas proceeding.  To the extent that Williams raises issues of the proper application of state law, they are beyond the purview of this Court in a federal habeas proceeding.  It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law.[59]

---

offender, and then under section 667, subdivision (a), to impose a five-year enhancement, conforms to the language of the Three Strikes law and does not contravene subdivision (f) of the One Strike law (§ 667.61, subd. (f)).").

[57] 28 U.S.C. § 2254(d); *see Williams*, 529 U.S. at 404-06; *see also Lockyer,* 538 U.S. at 70-75 (explaining this standard).

[58]  A shorthand reference to *People v. Superior Court (Romero)*, 917 P.2d 628 (Cal. 1996).  In *Romero*, the California Supreme Court held a trial judge has the discretion to strike a prior felony conviction, within the meaning of California's "Three Strikes Law" for the purposes of sentencing.

[59] *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (it is presumed that the state court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002); *see also Engle v. Isaac*, 456 U.S. 107, 119 (1982) (challenging the correctness of the application of state law does not allege a deprivation of federal rights sufficient for habeas relief); *Bell v. Cone,* 543 U.S. 447, 455 (2005) (a federal court may not lightly presume that a state court failed to apply its own law).

A fundamental principle of our federal system is "that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."[60]  This principle applied to federal habeas review of state convictions long before AEDPA.[61]  A federal court errs if it interprets a state legal doctrine in a manner that directly conflicts with the state supreme court's interpretation of the law.[62]  It does not matter that the state supreme court's statement of the law was dictum if it is perfectly clear and unambiguous.[63]

A determination of state law by a state intermediate appellate court is also binding in a federal habeas action.  This is especially true where the highest court in the state has denied review of the lower court's decision.  "Federal courts hold no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension."[64]  Williams has not stated a claim that is cognizable by this Court, subsequently, he is not entitled to relief under his fourth ground.

5.  Williams' Prison Term Constitutes "Cruel and Unusual Punishment" in Violation of the Eighth Amendment and the California Constitution

---

[60] *Bradshaw v. Richey,* 546 U.S. 74, 76, (2005); *see West v. AT&T,* 311 U.S. 223, 236 (1940) ("[T]he highest court of the state is the final arbiter of what is state law. When it has spoken, its pronouncement is to be accepted by federal courts as defining state law . . . .").

[61] *See Mullaney v. Wilbur,* 421 U.S. 684, 691 (1975) ("state courts are the ultimate expositors of state law").

[62] *See Bradshaw*, 546 U.S. at 76-78 ("Because the Sixth Circuit disregarded the Ohio Supreme Court's authoritative interpretation of Ohio law, its ruling on sufficiency of the evidence was erroneous.").

[63] *Id.* at 76.

[64] *Sanchez-Llamas v. Oregon*, 548 U.S. 331, 345 (2006) (quoting *Smith v. Philips*, 455 U.S. 209, 221 (1982)); *see Wainwright v. Goode*, 464 U.S. 78, 86 (1983) (per curiam).

The trial court sentenced Williams an aggregate term of 30 years, 4 months.  On direct appeal, Williams claimed that the duration of his sentence violated both the California and Federal constitutional prohibitions on "cruel and unusual punishment."  The California Court of Appeal held that Williams had procedurally defaulted this claim because he did not raise it during sentencing.  However, the Respondent has waived the procedural bar with respect to this claim.

To the extent that Williams claims that his sentence violated the California Constitution, his claim is beyond the purview of this court.[65]

Williams claims that the duration of his sentence is so disproportional to his crime that it constitutes a "cruel and unusual punishment."  Williams' argument is unpersuasive.  The Supreme Court has noted that, outside of capital cases, "successful challenges to the proportionality of particular sentences have been exceedingly rare."[66]  In *Rummel v. Estelle*,[67] the Supreme Court held that a mandatory life sentence imposed under a Texas recidivist statute following the defendant's third felony conviction for obtaining $120.75 by false pretenses did not constitute cruel and unusual punishment.  Rummel had been previously convicted in Texas state courts and sentenced to prison for felonies of fraudulent use of a credit card to obtain $80 worth of goods or services and passing a forged check in the amount of $28.36.  Thus, *Rummel* has come to "stand[] for the proposition that federal courts should be reluctant to review legislatively

---

[65] *Bradshaw,* 546 U.S. at 76; *see West,* 311 U.S. at 236 ("[T]he highest court of the state is the final arbiter of what is state law. When it has spoken, its pronouncement is to be accepted by federal courts as defining state law . . . .").

[66] *Ewing v. California*, 538 U.S. 11, 21 (2003).

[67] 445 U.S. 263 (1980).

mandated terms of imprisonment, and that successful challenges to the proportionality of particular sentences should be exceedingly rare."[68]

The defendant in *Rummel* was sentenced to life in prison for stealing $120.75 through fraudulent means.  Williams, on the other hand, was sentenced to 30 years, 4 months for armed robbery and assault.  Rummel's previous convictions included passing a bad check and fraudulently obtaining $80 worth of goods and services, whereas Williams' previous conviction was for a strong-arm robbery.  Indeed, in comparing the value of the goods stolen by Williams[69] with the value of the goods stolen by Rummel (approximately $230), this Court notes that Rummel received a harsher sentence for stealing a smaller aggregated amount.  This, coupled with the Supreme Court's admonition "that federal courts should be reluctant to review legislatively mandated terms of imprisonment, and that successful challenges to the proportionality of particular sentences should be exceedingly rare"[70] weigh strongly against a grant of relief.  Accordingly, this Court cannot say the Court of Appeal's decision upholding the duration of Williams' sentence was contrary to clearly established Federal law or was based on an unreasonable determination of the facts, he is not entitled to relief on his fifth ground.[71]

---

[68] *Hutto v. Davis*, 454 U.S. 370, 373-74 (1982).

[69] In his own petition, Williams claims that the laptop he stole had a restitution value of $500.00.  Docket No. 1, p. 30.

[70] *Hutto*, 454 U.S. at 373-74.

[71] 28 U.S.C. § 2254(d); *see Williams*, 529 U.S. at 404-06; *see also Lockyer,* 538 U.S. at 70-75 (explaining this standard).

V. CONCLUSION and ORDER

Brown is not entitled to relief under any ground raised in the Petition.  Accordingly,

**IT IS HEREBY ORDERED THAT** the Petition Under 28 U.S.C. § 2254 for Writ of

Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of

Appealability.[72]  Any further request for a Certificate of Appealability must be addressed to the

Court of Appeals.[73]

The Clerk of the Court to enter judgment accordingly.

Dated: May 18, 2010.

---

[72]  28 U.S.C. § 2253(c); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) ("reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further") (internal quotation marks omitted).

[73]  *See* Fed. R. App. P. 22(b); Ninth Circuit R. 22-1.

22

_____/s/ James K. Singleton, Jr._____

**JAMES K. SINGLETON, JR.**
United States District Judge